# JENKINS v. COVENANT MUTUAL LIFE INSUR-ANCE COMPANY, Appellant.

### Division Two, January 9, 1903.

1. **Insurance Policies:** WARRANTIES: APPLICATION OF STATUTE. The statute providing that misrepresentations made in securing a policy in an old line insurance company shall not avoid the policy unless the matter misrepresented actually contributed to the death of the insured, applies to warranties. It nullifies warranties as well as other misrepresentations, if the matter misrepresented was not material to the risk.

2. ———: ———: ———: TO REINSTATEMENT. Said statute applies to misrepresentations made in securing the reinstatement of a policy after it has lapsed because of a failure to pay premiums, as well as to original applications.

3. ———: CONSTITUTIONALITY OF STATUTE. The statute is constitutional. It is not a special law regulating the practice, or jurisdiction, or a change of the rules of evidence, in any judicial proceeding before courts or other tribunals. ·

4. ———: ———: INSURANCE POLICIES: CLASSES. The Constitution gives the Legislature the right to discriminate between old line insurance companies and those doing business on the assessment plan, by making inoperative a warranty clause in the policies of the one, and permitting it to defeat a recovery in those of the other. These are entirely two separate classes of companies.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* and *Thomas H. Reynolds* for appellant.

The court below tried this case and instructed the jury upon the theory that this case fell within the provisions of Revised Statutes 1899, section 7890. (a)

The statute applies to misrepresentations merely, not to warranties such as those contained in the health certificate. (b) The statute does not apply to either warranties or representations inducing or constituting a part of the contract of reinstatement; but only to representations made on the issuance of the policy, and the statute, being in derogation of the common law, must be strictly construed. (c) The statute is void for the reason that it falls within those provisions of the State Constitution prohibiting special legislation.

*Flournoy & Flournoy* and *Paxton & Rose* for respondent.

(1) Section 5849, Revised Statutes 1889, covers all representations, whether called warranties or not. Jacobs v. Life Assn., 146 Mo. 541; Schuerman v. Ins. Co., 65 S. W. 726; Van Cleave v. Ins. Co., 82 Mo. App. 685; Dean v. Mut. Life Assn., 86 Mo. App. 459; White v. Ins. Co., 4 Dillon 177. (2) There is no ground for maintaining that the statute does not apply to a contract of reinstatement, the word "issuance" not being used in the statute, and the words "obtaining or securing a policy" applying as aptly to a reinstatement as to the original issue of the policy. (3) Old-line companies are distinct in their nature and methods of business from assessment companies, and form a natural class to themselves, and, hence, laws applying to them alone are constitutional. State ex rel. v. Aetna Ins. Co., 150 Mo. 113; Northwestern Masonic Aid Assn. v. Waddell, 138 Mo. 628; Haynie v. Knights Templars, 139 Mo. 416.

BURGESS, J.—This is an action upon a policy of life insurance for one thousand dollars issued by the defendant company to John H. Jenkins, payable to his wife, Mary Jenkins, the plaintiff, and dated April 24, 1890. The premiums were due semiannually, but he made default in the payment of the one that became due October 24, 1896, and the policy lapsed by reason thereof.

On December 12, 1896, the assured applied for reinstatement of his policy, and upon a certificate signed by him in which he stated, ''I hereby warrant as the basis of such reinstatement, that I have not been sick since the issuance of said policy; that there has not been since that time any material change in my health,'' the policy was reinstated. There was some conflict in the evidence as to whether or not he had any serious ailment prior to the date of his application for reinstatement, and especially with respect to the time the symptoms of the disease (lung trouble) which finally led to his death, appeared, whether in the fall preceding his reinstatement or afterwards. It was, however, shown by plaintiff that in January, 1897, he contracted rheumatism, and that about a month before his death he contracted cold, which caused inflammation of the lungs, from which he died, July 8, 1897.

The court, over the objection and exception of defendant, instructed the jury in behalf of plaintiff as follows:

''1.   You are instructed that it is admitted in this case that the policy sued on was issued to John H. Jenkins by defendant on April, 24, 1890, and that he paid all the premiums due on said policy up to October 24, 1896, but failed to pay that premium when it became due; that on December 12, 1896, said John H. Jenkins made the certificate of health introduced in evidence and upon which his policy was reinstated, and that he on said December 12, 1896, paid said premium of October 24, 1896, and all other premiums on said policy as they became due, up to the date of his death, which, it is admitted, occurred on July 8, 1897; but defendant's defense in this action is upon the ground that said John H. Jenkins, in such certificate of health, made false representations and warranties as to the then or previous condition of his health about matters which actually contributed to his death. That the burden of showing that said John H. Jenkins made false representations and warranties in said certificate of health is upon the

defendant, and you can not find for the defendant, unless you believe from a preponderance of the evidence, that is, the greater weight of credible testimony in the case, that said John H. Jenkins made false representations and warranties in said certificate of health about matters which actually contributed to his death.

"2. You are instructed that although you may believe from the evidence in this case that John H. Jenkins was unwell at and previous to the time he made the application upon which the policy sued on was reinstated, and in such application he misrepresented the then and previous condition of his health, yet that will not be sufficient to warrant you in finding in favor of the defendant, unless you further believe from the evidence that the sickness, if any, with which the said John H. Jenkins was then or had previously been suffering, actually contributed to his death.

"3. If you find for the plaintiff, you will assess her damages at the sum of $1,000, with interest at the rate of six per cent per annum from September 30, 1897, less the $13.60 already paid."

The court gave the following instructions asked by defendant:

"4. The court instructs the jury that the failure of John H. Jenkins to pay the premium on the policy sued on, that fell due October 24, 1896, terminated the contract of insurance at that time.

"5. The court instructs the jury that the fact that the defendant is a corporation is wholly immaterial and its rights are the same as an individual's, and you should consider the case the same as if it were between two individuals."

The court refused to give the following instructions as asked by defendant:

"1. The court instructs the jury that if you find from the evidence that the policy of insurance sued on was reinstated by defendant company, relying upon the truth of the representations in the health certificate read in evidence; that such representations were not

true, and that said John H. Jenkins had been sick after the issuance of said policy and prior to the making of said certificate, or that there had been any material change in his health after the issuance of said policy and prior to the making of said certificate, then your verdict must be for defendant.

"2. The court instructs the jury that the failure of John H. Jenkins to pay the premium at the time specified in the policy terminated the contract of insurance sued on on October 24, 1896; that if said policy was reinstated by defendant upon the faith of the representations made by said John H. Jenkins and such representations were false, then said policy of insurance was void and plaintiff can not recover in this suit.

"3. The court instructs the jury that the defendant had a right to rely upon the truth of the representations in the certificate of health read in evidence; and if such representations were not true, then the policy of insurance sued on was void and your verdict must be for defendant.

"4. If the jury believe from the evidence that the defendant company would not have reinstated the policy sued on had it known the real state of facts in regard to the health of John H. Jenkins, and that the certificate of health read in evidence did not correctly state the facts in regard to the health of said John H. Jenkins, then your verdict must be for the defendant.

"5. The court instructs the jury that if you find from the evidence that John H. Jenkins had been sick, or that there had been any material change in his health, after the issuance of said policy, and prior to the making, on December 12, 1896, of the certificate of health read in evidence, and that the defendant company would not have reinstated said policy had it been advised of the real state of facts in regard to such sickness or change in the health of said John H. Jenkins, then your verdict must be for defendant.

"6. The court instructs the jury that the statements in the certificate of health read in evidence were

warranted to be true by said John H. Jenkins; that defendant company had a right to rely thereon, and that if said statements as to the sickness or health of said John H. Jenkins were not true, then the policy sued on can not be enforced against defendant and your verdict must be for defendant.

"7. The court instructs the jury that the statements of J. H. Jenkins deceased contained in the health certificate upon which the policy sued upon was reinstated, viz., that he had not been sick since the issuance of the policy and that there had not been since the issuance of the policy any material change in his health, habits or occupation, were and became when made warranties that said matters were absolutely true—and if they were not so true, then the reinstatement of the policy was void and it makes no difference whether the statements were material to the risk or not, and the verdict must be for the defendant."

To the action of the court in refusing to give said instructions as asked, the defendant excepted.

The court of its own motion, and over the objection of both plaintiff and defendant, gave instructions 1, 2 and 3, asked by defendant, in modified form, as follows:

"1. The court instructs the jury that if you find from the evidence that the policy of insurance sued on was reinstated by defendant company relying upon the truth of the representations in the health certificate read in evidence, that such representations were not true, and that said John H. Jenkins had been sick after the original issuance of said policy and prior to the making of said certificate, and that there had been any material change in his health after the original issuance of said policy and prior to the making of said certificate with any disease that actually contributed to the death of said John H. Jenkins, then your verdict must be for defendant.

"2. The court instructs the jury that the failure of John H. Jenkins to pay the premium at the time specified in the policy terminated the contract of insurance

sued on on October 24, 1896; that if said policy was reinstated by defendant upon the faith of the representations made by said John H. Jenkins, and such representations were false; and that the matters so falsely represented in said health certificate actually contributed to the death of said John H. Jenkins, then said policy of insurance was void and plaintiff can not recover in this suit.

"3.    The court instructs the jury that the defendant had a right to rely upon the truth of the representations in the certificate of health read in evidence; and if such representations were not true and related to matters which actually contributed to the death of John H. Jenkins, then the policy of insurance sued on was void and your verdict must be for defendant."

To the giving of said instructions in such modified form, the defendant also excepted.

The jury found for the plaintiff in the full amount of the policy, with interest, less the sum of $13.60.

In due time defendant filed its motion to set aside the verdict and for a new trial, which being overruled, it appealed.

It is claimed in behalf of defendant that the court below tried this case and instructed the jury upon the erroneous theory that it fell within the provisions of section 7890, Revised Statutes 1899, which reads as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, shall be deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, and whether it so contributed in any case, shall be a question for the jury."    [R. S. 1889, sec. 5849.]    That the instructions given told the jury in effect that if they believed that the statements contained in the health certificate given by the assured for the purposes of reinstatement, although untrue, did not relate to matters which contributed to assured's death, then their verdict

should be for the plaintiff.

The argument is that the statute applies to misrepresentations merely, not to warranties such as those contained in the health certificate.

In Jacobs v. Life Assn., 146 Mo. 523, the contention was that the statement of the assured in his application and examination were, by contract, made warranties, and if untrue in any respect, no recovery could be had on the policy. That the statements and representations being warranties, their breach vitiated the certificate or policy of insurance sued on; particularly was this true, when by the terms of the contract, they were all declared to be material to the risk. But the court said: ''It is not pretended that the matters misrepresented contributed to the death of Jacobs, and the contention resting solely on the ground that the misrepresentations were warranties, and as such exempt from the operation of this statute for the reason that the defendant's insurance contracts were upon the assessment plan, this contention must fail.'' In a word, the court held, that the policy being what is known as an old-line policy in so far as representations and warranties are concerned, fell within the provisions of section 7890, supra.

In Deane v. Mutual Life Assn., 86 Mo. App. 459, it was held that the misrepresentations contemplated by the statute include a misrepresentation which is warranted to be true. The same rule is announced in Schuermann v. Union Central Life Ins. Co., 165 Mo. 641.

It is also contended that the statute does not apply to either warranties or representations inducing or constituting a part of the contract of reinstatement; but only to representations made on the issuance of the policy, and the statute, being in derogation of the common law, must be strictly construed. We are not, however, impressed with the force of this position, but think the statutes should be given a more liberal construction, so as to include cases of reinstatement, as well as original applications. They are practically the same, and should be governed by the same rules.

"There is no doubt but that the same general rules which govern representations under the original contract would apply to a modification or alteration thereof." [2 Joyce on Insurance, sec. 1935.]

"Each renewal of a policy of insurance is a new contract, and is subject to the local laws in force at the time of the renewal." [Brady v. Ins. Co., 11 Mich. 425.]

"A renewal of a policy is, in effect, a new contract of assurance." [Hartford Fire Ins. Co. v. Walsh, 54 Ill. 1. c. 167.]

It is indisputable that before the passage of the act in question and up to the time of the decision in Jacobs v. Life Assn., supra, it was always held by the Supreme Court that there was a very material distinction between warranties and representations, and where a policy was applied for and the applicant warranted some matter, however immaterial to the risk and whether or not the assured died of any disease warranted against, if the warranties were shown to be untrue, the policy was held to be void. [Loehner v. Home Mutual Insurance Co., 17 Mo. 247; Mers v. The Franklin Insurance Co., 68 Mo. 127; Aloe v. Mutual Reserve Life Assn., 147 Mo. 561.] But they were by that case placed upon the same footing and rightly held to be embraced within the provisions of section 7890, supra. There is no more reason why a warranty not material to the risk should vitiate a policy than there is that a misrepresentation as to a non-material fact should do so. In speaking of this statute in the Schuermann case, supra, it is said: "As said before, life insurance companies in this State, prior to the adoption of section 7890, could, and by a practice almost universal, did, insert in their policies a stipulation to the effect that any untrue statement or answer made by the applicant for insurance (regardless of its materiality or regardless of the intent of the applicant in making same) should avoid the policy, and too frequently when demands were made upon them for the obligations of the policies the companies availed themselves of these harsh provis-

ions without a return by them of the money which they had obtained from the insured in his lifetime, and when the untrue statements made had little if any effect upon the risk undertaken by the insurer. This doctrine of warranties, in the extent to which it had grown and was applied, was something peculiar to insurance companies, and was therefore thought the subject of special legislation, in a law which properly undertook to affect insurance companies alone in that particular. By a long and hurtful practice of a given policy peculiarly their own, insurance companies had stamped themselves as a class, to which alone legislation might properly address itself, in that regard.''

Nor is section 7890, supra, within the prohibition of section 53, article 4, of the Constitution of the State. It is not a special law regulating the practice or jurisdiction or a change of the rules of evidence in any judicial proceedings before courts or other tribunals as asserted by defendant, but does apply to a certain class of insurance companies, that is, to that class of companies doing business upon a stipulated premium plan, which is entirely different from the assessment plan.

It was held in Haynie v. Knights Templars & Masons Indem. Co., 139 Mo. 416, that the Constitution of the State gives to the Legislature the right to discriminate between the liabilities of old-line insurance companies and those companies doing business on the assessment plan, with respect to the suicide clause in a policy of insurance, and if the Legislature has the right to do this, it must follow that it had the right to enact the statute in question.

It can not be said that there was no evidence to justify the verdict, and its weight was for the consideration of the jury.

Finding no reversible error in the record the judgment is affirmed. All of this Division concur.