MARY M. KELLER v. HOME LIFE INSURANCE COMPANY, Appellant.

Division Two, July 3, 1906.

1. **LIFE INSURANCE: Warranties: Application of Statute.** The statute which provides that "no misrepresentations made in obtaining or securing a policy" of life insurance shall avoid the policy unless concerning facts material to the risk, etc., applies to warranties and representations alike. There is no more reason why a warranty not material to the risk should vitiate the policy than there is that a misrepresentation as to a non-material matter should do so. Neither the one nor the other will avoid the policy.

2. ———: **Vexatious Delay: Ten Per Cent Statute: Constitutional.** The statute (sec. 8012, R. S. 1899) authorizing a jury to assess ten per cent damages, in addition to the amount of the policy and interest, for vexatious delay in paying the policy, is constitutional.

3. ———: ———: **Proof.** The question of vexatious delay on the part of the insurance company in paying the policy is a matter of fact to be determined by the jury. They must make up their verdict from the facts and circumstances of the case. The statute does not require the plaintiff to explicitly prove that the delay or refusal to pay was vexatious.

4. ———: **New Issues on Appeal.** Where the instructions asked by defendant company did not include a direction that the policy was void if the insured falsely stated that he had had no other physician except the one named, the judgment cannot be reversed on appeal on the ground that his answer to a question on that point was false.

5. ———: **Material Misrepresentation: Quick Consumption.** Where the physician who examined the deceased in October testified that at that time he was physically sound, and that in December he had pneumonia, and as a result of that disease quick-consumption set in, from which he died in June, it is proper to submit to the jury the question whether or not the insured, in stating in his application that he did not have and had not had consumption, falsely misrepresented a fact material to the risk, even though two other physicians testified that they had previously notified him that he had consumption.

Keller v. Home Life Ins. Co.

6. ———: ———: **Fraud: Question for Jury.** After the death of the insured the question of whether the policy can be avoided because of false and fraudulent misrepresentations of facts material to the risk made by the insured is, under the statute, one for the jury.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. H. Miller* and *T. D. Hines* for appellant.

(1) The refusal of the court to give instruction 3 asked by appellant was error. This instruction directed the jury to disregard plaintiff's claim for a ten per cent penalty as damages, and was, in effect, the opposite of instruction 2 given on behalf of respondent. (2) Appellant brought itself fully within the requirements of sections 7890 and 7891, Revised Statutes 1899, by pleading and proving many gross misrepresentations of assured in his application for the policy concerning the condition of his health, his habits, his past personal history, the physicians he had consulted; these representations were warranties; they were fraudulent in character, in that they induced the contract and were offered for that purpose; the matters misrepresented actually contributed to Keller's death; defendant tendered the first annual premium, the only one paid, back to plaintiff before the institution of this suit and by depositing this, with the interest to date of trial in court for plaintiff before the trial; there being no question about these answers of assured being absolutely false, the judgment is without evidence to support it, and this cause should be reversed and not remanded. (3) While section 7890, Revised Statutes 1899, provides that no misrepresentation made in obtaining a policy of insurance in an old line company such as this shall be

deemed material, or render the policy void, unless the matter misrepresented shall have actually contributed to the event on which the policy is to become due, and, whether it so contributed, shall be a question for the jury; yet, in this case, there was absolutely not one scintilla of evidence upon which the verdict of the jury could or can rest. The misrepresentations were admittedly about Keller's having had consumption. The testimony of Dr. Blomeyer and of Dr. Kiehne that Keller had had consumption in the spring previous to his being insured by appellant was not denied or questioned by any one. That they told Keller the nature of his disease is not pretended to be denied by any witness. That he successfully concealed these damning facts by misrepresentations, which were sweeping and wilful, stands unchallenged by testimony of any kind or character in the case. That Keller died of consumption within about six months after the policy in suit was issued, is admitted by everybody. Hence, appellant now charges that the trial court should have set aside the verdict, and it not having done so upon proper motion, with exception properly saved, this court should reverse and not remand this case. (4) Instruction 2 for respondent submitted to the jury the question of a ten per cent penalty for a "vexatious" defense and defined the term "vexatious." This is clearly error, first, because the evidence will not justify such a conclusion; and secondly, because the statute itself is violative of article 5 and article 14 of the amendments to the Constitution of the United States. Paddock v. Railroad, 155 Mo. 524; State v. Loomis, 115 Mo. 307; Thompson v. Ins. Co., 169 Mo. 30; Brown v. Railroad, 169 Mo. 30; Brown v. Railroad, 104 Mo. App. 697; Williamson v. Ins. Co., 105 Fed. 31. (5) A warranty must be strictly true, as it defines the limits of the obligation assumed by the insurer, and if it is false in any part, whether that part affects the risk or not, there can be no recovery on the contract. Mc-

Dermott v. M. W. A., 97 Mo. App. 647; Aloe v. Ins. Co., 147 Mo. 561; Reid v. Ins. Co., 58 Mo. 421; Mers v. Ins. Co., 68 Mo. 127; Boyle v. Ins. Co., 95 Wis. 312; Jefferies v. Ins. Co., 22 Wall. 47; Ins. Co. v. France, 91 U. S. 510. An untruthful answer by an applicant for insurance, where the answers are warranted to be true, has been held to be a breach of warranty and to avoid the policy of insurance. Ins. Co. v. Reutlinger, 58 Ark. 528; Cobb v. Ins. Co., 153 Mass. 176; Caruthers v. Life Ins. Co., 108 Feb. 487; Life Ins. Co. v. McTague, 49 N. J. L. 587; Ins. Co. v. O'Hara, 120 Pa. St. 256; Phillips v. Life Ins. Co., 9 N. Y. Supp. 836; Ins. Co. v. Van Wald, 49 Pac. 782; Ins. Co. v. Arhelger, 36 Pac. 895; Brady v. Life Ins. Co., 60 Fed. (C. C. A.) 727; Sladden v. Life Ins. Co., 86 Fed. 102; White v. Ins. Co., 103 N. Y. 341; Life Ins. Co. v. Llewellyn, 58 Fed. 940; Scharzbach v. Ins. Co., 25 W. Va. 622; Geach v. Ins. Co., 20 N. Y. 293; Aloe v. Ins. Co., 147 Mo. 561; McDermott v. Ins. Co., 97 Mo. App. 636.

*Wilson Cramer* for respondent.

(1) Section 7890, as contrued by the more recent decisions of this court, abolishes the distinction formerly made between warranties and representations and places them on an equal footing. Jacob v. Life Ass'n, 146 Mo. 523; Aloe v. Fidelity Mut. Life Ass'n, 164 Mo. 675; Scheurmann v. Life Ins. Co., 165 Mo. 641; Kern v. Legion of Honor, 167 Mo. 471; Jenkins v. Life Ins. Co., 171 Mo. 383; Williams v. Ins. Co., 189 Mo. 70. (2) In the court below defendant recognized the applicability of section 7890 by asking an instruction based upon it. (3) Since the decision in the case of Railroad v. Ellis the Supreme Court of the United States has directly passed upon and upheld as constitutional statutory provisions relating to insurance companies, which authorize the collection of damages for refusal to pay promptly, and attorney's fees in actions

against such companies. Fidelity Mut. Life Ass'n v. Mettler, 185 U. S. 308; Ins. Co. v. Lewis, 187 U. S. 335; Ins. Co. v. Dobney, 189 U. S. 301. (4) The question of vexatious delay is a question of fact to be determined by the jury from all of the facts and circumstances in the case, and two juries have decided that issue against the defendant. Brown, Admr., v. Ry. Passenger Ins. Co., 45 Mo. 221. (5) The defense set up in the answer is strictly a legal defense and the burden of proof is upon the defendant. Scheurmann v. Ins. Co., 165 Mo. 641.

FOX, J.—This cause is brought to this court by appeal on the part of the defendant from a judgment of the Cape Girardeau Circuit Court in favor of the plaintiff for the sum of $2,475. This was a suit by plaintiff, who is the widow of August W. Keller, deceased, against the defendant insurance company of New York, an old line company, upon a policy dated October 30, 1899, for $2,000.

The sufficiency of the petition stating the cause of action is not challenged, but it is conceded by appellant that the petition is in the usual form in cases of this character.

The main contentions in this cause arise upon the defenses set up in the answer and the evidence introduced upon such defenses and the instructions given by the court applicable to such evidence; therefore, to fully appreciate this controversy it is important to state at least the substance of the defenses interposed by the answer.

The answer contained three counts. The first count was an admission of the character and business of defendant as charged in the petition, coupled with a general denial.

The second count set out at length the facts leading up to the issuance of the policy; set out fully the application of assured to defendant upon which the

policy was issued; also set out fully the declarations of Keller to the company's medical examiner, and charged that by the terms of the policy the said written application of assured, together with his answers and his declarations to the medical examiner of defendant, were a part of the policy and constituted the basis upon which said policy was issued. This count of the answer charged that assured's answers to questions propounded to him in these two papers were replete with false statements and misrepresentations concerning the condition of his health, his history, his habits and his treatment by other physicians, etc., and charged that assured did not make these misrepresentations innocently, but knowingly, and with the specific intent to deceive the company; that they did deceive the company into issuing the policy in suit; and that but for said false representations and answers said policy would never have been issued. This count of the answer also charged that in the said application, so made, as well as in his said declarations to the medical examiner, Keller, over his own signature, expressly warranted in his own behalf and on behalf of all persons who might claim any interest in said policy, that all of his said answers to said questions therein were true, full and complete. The second count further charged that these said misrepresentations, false and fraudulent in character, were warranties and were about matters which contributed directly to the death of Keller. That the first annual premium had been tendered in return to plaintiff before suit was brought, and it was accompanied with a deposit in court of the premium and the accumulated interest on it. This count specifically charged that Keller was a consumptive long before he applied for this insurance. That he had been treated for it, advised that he had it, and that he died with that disease.

The third count in the answer charged that the statute which provides for a ten per cent penalty for

a vexatious defense to a suit upon an insurance policy was void and of no effect as contravening the 14th amendment of the Constitution of the United States, and section 20 of article 2 of the Constitution of Missouri.

The replication was a general denial.

The testimony upon the trial of this cause on the part of the plaintiff tended to substantially prove the following state of facts: That August W. Keller was a farmer about 38 years of age, owning and operating a large farm, of which about 125 acres were cleared, and doing the greater part of the work himself. In the fall of 1899 he was hunted up by Baird Palette, the agent of the defendant insurance company, and prevailed upon to take out a policy of insurance on his life. On the 18th day of September, 1899, he made application on a blank furnished by the agent, and on the same day was examined by Dr. A. L. Franklin, the medical examiner for the company. In connection with the medical examination he was required to sign a paper entitled: "Declarations made to the Medical Examiner of the Home Life Insurance Company." The medical report being favorable, a policy for $2,000, payable to Mary M. Keller, wife of the insured, was issued and delivered October 30, 1899. During the same fall, after the date of his application for insurance, Keller put in 40 or 45 acres of wheat, doing most of the work himself, and attended to all of his farming operations. In December he took pneumonia and from this on continued in bad health until he died in the following June of quick or galloping consumption, an after-effect of the pneumonia. Dr. A. L. Franklin, who was still the medical examiner of the defendant, attended him while he had pneumonia and he treated him for some time thereafter, and in testifying in this cause attributes the

quick consumption to this disease. The report of Dr. Franklin, the medical examiner of the defendant, was introduced in evidence, in which the following questions and answers appeared:

"How long have you known him? Seven years.

"Does his facial aspect indicate health and vigor? Yes.

"Is there anything unfavorable in his general appearance? No.

"Figure—state whether it is erect or stooping? Erect.

"Is the respiratory murmur clear and distinct over the lungs? Yes.

"Do auscultation and percussion show an entire absence of any signs of past or present disease of respiratory organs? Yes.

"State the rate and other qualities of the pulse? Seventy-two, full and regular.

"Is it irregular, or intermittent? No.

"Are the sounds and rhythm of the heart regular and normal? Yes.

"Is there any evidence of undue strength or weakness of the heart action? No.

"Are there any indications of disease of the heart or blood vessels? No.

"Is the apex-beat in the usual place? Yes.

"Is there any evidence of derangement of function of the stomach or other abdominal organs? No."

It was further shown in evidence that after the death of plaintiff's husband defendant without awaiting formal proof of death or any action on the part of beneficiary sent a messenger down into the country to Mrs. Keller's home with directions to tender her $79.72, the amount of the premium paid by her husband, and to deliver to her a letter from the company denying liability under the policy. The plaintiff, the widow of the deceased, August W. Keller, refused this tender.

The claim for this insurance was placed in the hands of Wilson Cramer, an attorney at law, and he notified the proper agents of the company of such fact and requested of them to know as to whether or not they would pay such policy or refuse to pay it. The response to this inquiry by the attorney was that for good reasons the company would refuse to pay the policy, and referred Mr. Cramer to their attorney, Mr. T. D. Hines, of Jackson, Missouri, for further information.

The policy of insurance issued by the defendant on October 30, 1899, on the life of August W. Keller, for $2.000, on which this suit is based, was introduced in evidence. We deem it unecessary to reproduce such policy as there is no controversy as to its contents, and such portions of it as have application to the controverted questions involved in this suit will be given due consideration during the course of this opinion. The policy contained this clause: ''In consideration of the statements and agreements made in the application for this policy, which are hereby made a part of this contract.'' A copy of the application was written upon the back of the policy, and this language used in such application: ''I warrant on behalf of myself and of any person who shall have or claim any interest in any policy issued under this application that all the foregoing statements and answers are true, full and complete, whether written in my own hand or not, and are offered to the company together with those contained in the declarations of the Home Life Insurance Company's medical examiner as a consideration for, and as the basis of the contract with said company under any policy issued under this application.''

The defendant offered in evidence the declarations made by August W. Keller to the medical examiner, which were signed by August W. Keller, and witnessed by A. L. Franklin, the medical examiner. It is unnecessary to reproduce all of the questions and

answers contained in such declarations, but it is sufficient to refer to those which are applicable to the defenses set up in the answer, that is, to such questions and answers as have reference to any lung trouble prior to the issuance of this policy. Such questions and answers were as follows:

"Are you in perfect health so far as you know and believe? A. Yes.

"Has any physician ever given an unfavorable opinion on your life? A. No.

"Have you ever had, or have you ever been subject to spitting or coughing? A. No.

"Of blood? A. No.

"Chronic hoarseness? A. No.

"Chronic cough? A. No.

"Difficulty of breathing? A. No.

"Have you ever had any serious illness, disease or injury, not named above? A. No.

"Has change of climate for your health ever been made or advised? A. No.

"Do you ever drink wine, spirits, or malt liquors? A. No.

"If so, which of these and to what extent? A. No.

"Has there ever been in your family, among your parents, brothers or sisters, uncles or aunts, any consumption, etc? If so, state particulars? No.

"Is your wife, or other member of your household, tuberculous? A. No.

"What is the name and residence of your physician? A. Dr. A. L. Franklin, Dutchtown, Mo.

"When and for what have his services been sought? A. For my family.

"What other physicians have you consulted? A. None."

Doctors Blomeyer and Kiehne, physicians residing in Cape Girardeau county, Missouri, both testified

in behalf of the defendant. Dr. Blomeyer's testimony may thus be briefly stated: That on the 7th of April, 1899, Keller came to the doctor's office and was examined and treated by the doctor for consumption; that he advised Keller what was the matter with him, saying, "In my opinion you have incipient tuberculosis, which you know means consumption;" that he continued to treat Keller through the months of April and May and up to June 3rd, and Keller was on each visit advised by the doctor that he was in the first stages of consumption. The doctor also advised him to change climate; that Keller then had chronic hoarseness and a chronic cough, difficulty of breathing, hectic fever and a cavity in the right lung. Dr. Blomeyer testified that Keller's disease had a tendency to progress. That Keller on his last visit, on June 3rd, said he would consult Dr. William Kiehne. Dr. Kiehne testified that on June 6th, Keller came to his office for examination and treatment; that he saw Keller again on June 10th and 17th; that he came to the conclusion that Keller had consumption and told Keller so; that he was Keller's family physician for four years and had treated Keller himself before that. That when Keller came to him in June Keller had a continuous cough, was hoarse, had difficulty of breathing, and hectic fever. Neither of these physicians had made a microscopical examination of the septum of Keller; but both, upon independent examinations, had diagnosed Keller's disease to be tuberculosis of the lungs.

The deposition of Dr. Frank W. Chapin, who was defendant's physician and medical director, was also read in evidence, as well as that of Mr. St. John, vice-president of defendant company. Their testimony was substantially this: That they assumed that Keller's answers in his application for insurance were true and had they known that Keller had a bad personal history or bad family history, or that he had been treated for

consumption, and had suppressed the information, and had been subject to spitting and coughing, or had been subject to chronic cough, they would have declined to take the risk.

This is a sufficient indication of the facts elicited upon the trial in order to determine the legal propositions involved.

At the close of the evidence the court instructed the jury as follows at the request of the plaintiff:

"1.  The court instructs the jury that by the policy of insurance offered in evidence defendant promised and agreed to pay $2,000.00 to Mary M. Keller, if living, immediately upon receipt and approval of proof of death of the said August W. Keller, provided the policy was then in force.. That if you shall find from the evidence that the said August W. Keller died on the 15th of June, 1900, and that plaintiff, Mary M. Keller, is his widow, and shall further find that proof of death was furnished to defendant, or that defendant, after the death of said Keller, offered to return to plaintiff the premium or advance payment made to it by him for said policy and refused to pay plaintiff the amount specified in said policy, then plaintiff is entitled to recover the amount of said policy, with six per cent interest from the time of such refusal to pay, unless you shall find from the evidence that the execution of said policy was procured by said August W. Keller by misrepresentations made by him to defendant or its agent of matters which actually contributed to cause his death.  And the court further instructs you that no misrepresentations in securing said policy of insurance are material or sufficient to avoid said policy, unless it shall be shown by the evidence that the matters misrepresented actually contributed to produce the death of said Keller.

"2.  And the court further instructs the jury that if you shall find from the evidence that the defendant before the institution of this suit refused to pay plain-

tiff the amount of said policy, and shall further find from all the facts and circumstances shown by the evidence that its refusal to pay was vexatious, that is, without reasonable cause, then you may allow her, in addition to the amount of the policy, and interest, a sum not exceeding ten per cent of the amount of the policy, and should return a verdict for that aggregate sum if you find the issues for the plaintiff.''

To the giving of the aforesaid instructions the defendant at the time objected and excepted.

At the request of the defendant the court instructed the jury as follows:

''1.   The court instructs the jury that the written application of August W. Keller, together with his written declaration to the defendant's medical examiner, are a part of the policy sued on.

''2.   The court instructs the jury, if you believe and find from the evidence that in his application for the policy or contract in suit the deceased, August W. Keller, in answer to questions stated to defendant's medical examiner, that he had never been subject to asthma or to spitting or coughing, or to spitting or coughing of blood, or to chronic hoarseness, or to chronic cough, or to difficulty of breathing, or been subject to malaria; that he did not drink wine, spirits or malt liquors, except a drink of beer once a week, and that he had never used them to excess; and you further find from the evidence that any one or all of said answers were untrue and that defendant relied upon their truth in issuing the policy in suit and that any one or all the matters which were misrepresented, should you find any of them to have been misrepresented, contributed actually to the death of assured, then your verdict will be for defendant, notwithstanding you may find that such false representations, if any, were innocently made.''

The court refused the following instructions asked by defendant:

"1. Now, at the close of all the evidence, the court instructs the jury that under the pleadings and the evidence your verdict must be for defendant.

"2. The court instructs the jury that if you believe and find from the evidence that in his application for the policy, or contract in suit, deceased, August W. Keller, in answer to questions, stated to the medical examiner of defendant that he did not drink wine, spirits or malt liquors, and had never used them freely or to excess; that he was in perfect health so far as he then knew and believed; that no physician had given him an unfavorable opinion on his life; that he had never been subject to asthma or to spitting or coughing, or to spitting or coughing of blood, or to chronic hoarseness, or to chronic cough, or to difficulty of breathing, or had never been subject to malaria; that he had consulted no physician other than Dr. A. L. Franklin, of Dutchtown, Mo., and him only for his family; that he did not drink wine, spirits or malt liquors, except a drink of beer once a week, and that he never used them freely or to excess; and you further find and believe from the evidence that all or any of the statements so made were false and were known by said August W. Keller to be false at the time of making them; and that they were made for the purpose of obtaining the policy in suit and that defendant company relied upon the truth of such allegations in issuing the policy in suit; then, in that event, your verdict must be for the defendant, and this notwithstanding you may find and believe from the evidence that none of the matter embraced in such false answer or answers contributed directly to his death. In other words, you are instructed that the applicant warranted his answers in his application to be true, and if you find any of them were untrue and that applicant knew them to be untrue at the time of making them and that they were relied upon by defendant in issuing the policy such false representations were fraudulent and render the policy in suit void.

"3.  The court instructs the jury that under the evidence and pleadings you will disregard the claim made by plaintiff for ten per cent damages."

To which ruling of the court in refusing the last three instructions defendant at the time objected and excepted.

The cause was submitted to the jury upon the evidence and instructions as heretofore indicated and they found the issues for the plaintiff and assesed her damages in the sum of $2,475. A timely motion for a new trial was filed and by the court overruled. Judgment was entered in accordance with the verdict and from this judgment the defendant in due time and proper form prosecuted its appeal to this court and the record is now before us for review.

### OPINION.

The record in this cause discloses the assignment of numerous complaints of error committed by the trial court, but it is apparent from the brief of learned counsel for appellant that the contentions in respect to such errors are mainly directed to the giving, at the request of plaintiff, of erroneous instructions, and the refusal, at the request of defendant, to give proper instructions. The complaints of appellant may thus be briefly stated:

First.  That instruction number 1 given by the court at the request  of plaintiff, was erroneous, and that the court committed error in its refusal of instruction number 2 requested by defendant.

Second.  That instruction number 2 given by the court at the request of plaintiff, was improper and erroneously declared the law.

Third.  That the court improperly refused instruction number 3 requested by defendant.

Fourth.  That the court erroneously refused to

give the peremptory instruction in the nature of a de-
murrer to the evidence, requested by defendant.

We will treat of these complaints of appellant in
the order as above indicated.

I. Instruction number 1, the correctness of which
is challenged by appellant, is predicated upon section
7890, Revised Statutes 1899, which provides that "no
misrepresentation made in obtaining or securing a pol-
icy of insurance on the life or lives of any person or
persons, citizens of this State, shall be deemed material,
or render the policy void, unless the matter misrepre-
sented shall have actually contributed to the conting-
ency or event on which the policy is to become due and
payable, and whether it so contributed in any case shall
be a question for the jury."

That section has been in judgment before this
court in numerous cases, and its force and effect have
been fully recognized; hence it must be treated as a
valid, subsisting statute, applicable to the subject it
was designed to cover. [Jacobs v. Life Association,
146 Mo. 523; Aloe v. Life Association, 164 Mo. 675;
Schuermann v. Ins. Co., 165 Mo. 641; Jenkins v. Ins.
Co., 171 Mo. 383; Williams v. Ins. Co., 189 Mo. 70.]
This section, in the cases cited, received at the hands
of the court most careful consideration, and the reasons
for its enactment are clearly stated in Schuermann v.
Ins. Co., supra, wherein it is said: "The act in ques-
tion was in no sense intended as a general restraint
upon the power of courts of equity by proper proceed-
ings to relieve against actual fraud, perpetrated or at-
tempted against insurance companies doing business
in this State, by parties seeking insurance; but its
manifest aim and object was to check and prevent the
wrongs and injustice that too frequently befell the rela-
tives and friends of the insured after their death, re-
sulting from the growing evil practiced by life insur-
ance companies, of calling for answers to all manner of
immaterial questions from the applicant for insurance,

bearing in the remotest degree, if at all, upon the risk to be assumed, and then by a general provision, incorporated in the policy to be issued, declaring that if any one of the answers be untrue, or not, as stated, it should avoid the policy, which condition, without legislative aid, the courts were compelled to enforce without regard to whether the particular answer that was shown to be untrue was material to the risk or not, or whether the untrue answer was the result of an innocent mistake or an intentional wrong.''

Appellant is in no position in this cause to challenge the applicability of section 7890, for the reason that it requested and obtained instruction number 2, which is clearly predicated upon the provisions of this section.   This must be treated as a clear recognition by appellant of the applicability of the provisions of second 7890 to the facts in this case.   However, it is insisted by appellant that the declarations to the medical examiner, which are contained in the application for insurance, by the insured, should be treated as warranties under the provisions of the policy, and it is contended that the failure of such warranties avoids the policy, and the instruction was erroneous in treating such warranties as mere representations.   We are unable to give our assent to this insistence.   In the very recent case of Jenkins v. Ins. Co., supra, BURGESS, J., speaking for this court, left no doubt as to the views of the court upon this proposition, and in plain terms announced that there was no reason for making a distinction between warranties and representations.   In discussing this subject, it was said: ''It is indisputable that before the passage of the act in question and up to the time of the decision in Jacobs v. Life Assn., supra, it was always held by the Supreme Court that there was a very material distinction between warranties and representations, and where a policy was applied for and the applicant warranted some matter, however immaterial to the risk and whether or not the

assured died of any disease warranted against, if the warranties were shown to be untrue, the policy was held to be void.   [Loehner v. Home Mutual Ins. Co., 17 Mo. 247; Mers v. Franklin Insurance Co., 68 Mo. 127; Aloe v. Mutual Reserve Life Assn., 147 Mo. 561.] But they were by that case placed upon the same footing, and rightly held to be embraced within the provisions of section 7890, supra.   There is no more reason why a warranty not material to the risk should vitiate a policy than there is that a misrepresentation as to a non-material fact should do so.   In speaking of this statute in the Schuermann case, supra, it is said: 'As said before, life insurance companies in this State, prior to the adoption of section 7890, could, and by a practice almost universal, did, insert.in their policies a stipulation to the effect that any untrue statement or answer made by the applicant for insurance (regardless of its materiality or regardless of the intent of the applicant in making the same) should avoid the policy, and too frequently when demands were made upon them for the obligations of the policies the companies availed themselves of these harsh provisions without a return by them of the money which they had obtained from the insured in his lifetime, and when the untrue statements made had little, if any, effect upon the risk undertaken by the insurer.   This doctrine of warranties, in the extent to which it had grown and was applied, was something peculiar to insurance companies, and was therefore thought the subject of special legislation, in a law which properly undertook to affect insurance companies alone in that particular.   By a long and hurtful practice of a given policy peculiarly their own, insurance companies had stamped themselves as a class to which alone legislation might properly address itself in that regard.' ''

Following the rules so clearly announced in that case and in view of the fact that appellant, by its instruction number 2, fully recognized that the provisions

of section 7890 were applicable to the representations in this case, it must be held that there was no error in giving instruction number 1 at the request of the plaintiff and refusing instruction number 2 requested by defendant.

II. It is next earnestly contended and ably argued that instruction number 2 given at the request of plaintiff, was erroneous.

This instruction complained of is predicated upon section 8012, Revised Statutes 1899, which provides: "In any action against any insurance company to recover the amount of any loss under a policy of fire, life, marine or other insurance, if it appear from the evidence that such company vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not exceeding ten per cent on the amount of the loss, and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict."

The contention of appellant respecting the error complained of in the giving of instruction number 2, is based upon two theories: First, that the section is unconstitutional; second, that there was no evidence upon which to predicate such an instruction.

As sustaining the contention that section 8012 is unconstitutional, our attention is directed to Paddock v. Railroad, 155 Mo. 524, and Thompson v. Traders' Ins. Co., 169 Mo. 12. It will be observed that the Paddock case is based upon the ruling of the Supreme Court of the United States in Railroad v. Ellis, 165 U. S. 150, and in the case of Thompson v. Traders' Ins. Co. it was held that the Constitution and laws of Missouri had no application to the facts in that case, for the reason that the property insured was located in the State of Kansas. The contract was entered into in that State; the property was destroyed in that State;

the cause of action accrued in that State and the parties to the proceeding were residents of the State of Kansas; however, the court did refer to the case of Ry. Co. v. Ellis, and said that as long as that case was not overruled it was the duty of this court to follow it. The Ellis case has not been overruled, but the Supreme Court of the United States has held valid and constitutional a statutory provision relating to the prompt payment of the amount of death losses designated in insurance policies, very similar to the provisions of the section now in judgment before us.

In Fidelity Mut. Life Assn. v. Mettler, 185 U. S. 308, the constitutionality of a statute of the State of Texas was involved. It provided as follows: "In all cases where a loss occurs and the life or health insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent damages on the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of such loss."

In that case it was earnestly and ably argued that the Ellis case was a controlling authority in support of the contention that the statute above indicated was unconstitutional and was decisive of the question; however, the Supreme Court of the United States, speaking through Mr. Chief Justice FULLER, ruled otherwise, after reviewing all the authorities held that the Supreme Court of Texas, as well as the Court of Appeals of that State properly distinguished the Ellis case, and it was expressly ruled that the statute of Texas, applicable to this subject, was constitutional.

In Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, the constitutionality of the Texas statute was again challenged, notwithstanding the recent ruling of that court in case of Life Assn. v. Mettler, supra. The court disposed of this effort to have the question reconsidered,

by simply saying in substance that it was entirely satis-
fied with the Mettler case and the reasons assigned for
the conclusions announced. It will be noted that both
the Ellis and Mettler cases involved the constitutionality
of the Texas statute, and Mr. Justice BREWER, who
wrote the opinion in the Ellis case, concurred with
Chief Justice FULLER in the judgment in the Mettler
case.

The lawmaking power in the enactment of the Tex-
as statute, as well as the Missouri General Assembly
in the enactment of the statute in the case at bar, doubt-
less, as was said in the Mettler case, ''had in mind also
the necessity of the prompt payment of the insurance
money, in very many cases, in order to provide the
means of living of which the beneficiaries had been de-
prived by the death of the insured.''

We are of the opinion that the Mettler case clear-
ly and correctly announced the true rule applicable to
the Texas statute, and the rules announced in that case
being equally applicable to the Missouri statute treat-
ing of the same subject, it becomes our duty to fol-
low that case; hence it must be held that section 8012
is a valid and subsisting law, and may be enforced by
the courts of this State; and there was no error in giv-
ing instruction number 2 on that ground.

It is however insisted that there was no testimony
upon which to base such instruction. The question of
vexatious delay on the part of the defendant in paying
this death claim, was one of fact to be determined by
the jury.

It was said by this court in Brown v. Ry. Passenger
Assurance Co., 45 Mo. l. c. 227, that ''the whole ques-
tion of vexatious refusal or delay is a matter of fact to
be determined by the jury. They must make up their
verdict on this issue by a general survey of all the facts
and circumstances in the case; and if, upon a full con-
sideration, they conclude that the refusal was unjusti-
fiable and vexatious, the law authorizes them to assess

the damages. The statute will not admit of the construction contended for by the counsel for the plaintiff in error, that before damages are allowed it must be explicitly proved by the plaintiff that the delay or refusal was vexatious.''

In our opinion the record discloses sufficient evidence to warrant the court in submitting the question of vexatious delay in the payment of this claim to the jury, and we shall not undertake to usurp the province of the jury and retry such question upon this appeal.

III. Instruction number 3 requested by defendant was properly refused by the court. It substantially told the jury to ignore the claim of plaintiff for damages by reason of vexatious refusal to pay the death claim, the recovery of which was sought by this action.

Section 8012, which provides for the recovery of such damages, has been heretofore fully discussed, and it is sufficient to say that there was no error in the action of the court in its refusal of this instruction.

IV. This brings us to the final contention of appellant, that the evidence in this cause is insufficient to support a recovery and that the court erred in its refusal of the peremptory instruction requested by defendant, declaring that under the pleadings and evidence in this cause plaintiff is not entitled to recover.

Upon this contention appellant earnestly insists that the statements of August W. Keller to the medical examiner of defendant, that he had not been treated by any other physician, when in fact the testimony of the physicians shows that this statement was untrue, should avoid this policy, and the court should have so declared to the jury. Defendant is in no position to complain that the question as to whether the insured had ever been treated by another physician prior to the time he made his declarations to the medical examiner was not submitted to the jury, for there was no request made to submit that question. Instruction number 2 given at the request of defendant includes numerous

declarations of the assured, charged in the answer to be false, and submits to the jury those questions; but we nowhere find that defendant requested the submission of the question upon which it now bases its complaint. Our attention is directed to the case of Aloe v. Life Assn., 147 Mo. 561, as supporting this contention. An analysis of that case will demonstrate that it has no application to the case at bar. In that case the business of the defendant was limited to insurance on the assessment plan. The policy in the case at bar is conceded to be an old-line policy. It was expressly ruled in that case, the court speaking through BURGESS, J., that section 5849, Revised Statutes 1889, which is substantially the same as section 7890, Revised Statutes 1899, had no application to insurance policies on the assessment plan; it therefore follows that the respresentations of which appellant now complains, that the insured had been treated by other physicians, is covered by section 7890, and unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable, it would be of no avail to appellant, and whether it so contributed was a question for the jury. While the diseases for which the insured sought other physicians for treatment may have contributed to his death, yet we are unable to understand how a false statement as to the mere fact as to whether he had consulted or had been treated by other physicians, could do so. This is a civil case, and if appellant desired to have the question of the truth or falsity of the statements made by the assured, that he had not consulted or been treated by any other physician, submitted to the jury, it was clearly its duty to make such request.

We have read in detail the evidence in this cause as disclosed by the the record and in our opinion it was a case for the jury. The jury had the doctors who testified in this cause before them at the trial, and it was

specially the province of the jury to determine their credibility and the weight to be atached to their testimony. Dr. Franklin was the medical examiner and agent of the defendant; he examined plaintiff's husband for insurance and made report to the defendant. He was physically sound then. He testified that Mr. Keller died of quick consumption, which was the result of pneumonia, contracted after the issuance of the policy. If the jury believed his testimony then there is nothing remarkable in the finding of the jury that the matter misrepresented by the insured did not contribute to his death. It may be conceded that the physicians testifying for the defendant are gentlemen of high standing in their profession, and doubtless they are, and that the jury were bound to believe their testimony (which under the well-settled rules of practice, they were not bound to believe), yet it was a question for the jury to answer as to whether the matter misrepresented contributed to the death of the insured.

The defendant in this cause, as was ruled in Schuermann v. Ins. Co., supra, might have maintained a proceeding in equity prior to the death of August W. Keller to annul the contract of insurance, on the ground of false and fraudulent statements charged in the answer; but after the policy had been duly issued and all liability under it had matured on account of a contingency therein provided against, it is clear that the question of false and fraudulent representations in securing such policy in an action to recover the amount of the death claim, must be governed by the provisions of section 7890, and as to whether the misrepresented matters in the application for insurance contributed to the happening of the contingency insured against, are questions of fact to be determined by the jury to whom such facts are submitted.

The defendant in this cause had the sole power of selecting its medical examiner; it selected Dr. Franklin. He made the examination of Mr. Keller, reported the

same to the defendant; it at least placed sufficient reliance upon such report to enter into the contract of insurance. The testimony of Dr. Franklin, together with his report of the examination of the insured, and other facts and circumstances developed at the trial, clearly authorized the trial court to submit this cause to the jury, and we know of no rule which would warrant the ignoring of the testimony of defendant's own medical examiner and taking the case from the jury, simply on the ground that defendant now seeks the opinion of other physicians, and whose testimony tends to establish misrepresentations alleged in the answer as to certain matters in his application for insurance.

It was doubtless the dominating thought in the legislative mind by the enactment of section 7890, to meet and cover just such cases of the nature and character here presented.

We have indicated our views upon the legal propositions disclosed by the record. The issues of fact in this cause were fully and fairly covered by the instructions of the court, and finding no reversible error the judgment of the trial court should be affirmed, and it is so ordered.

*Burgess, P. J.,* and *Gantt, J.,* concur.