## JAMES SALTS, etc., Respondent, v. PRUDENTIAL INSURANCE COMPANY, Appellant.

**St. Louis Court of Appeals, June 8, 1909.**

1. **LIFE INSURANCE: Statements in Application: Jury Question.** On a review of the evidence, it is *held* that it does not conclusively show insured had consumption, when the policy of life insurance was written, nor that the statements in her application were false.

2. —————: **Policy: Application Part of Contract.** A policy of life insurance, which provides that it should be void if any representation upon which it was obtained was not true, shows the intention was that the application should be embraced as part of the contract.

3. —————: **Warranties: General Rule.** A warranty, in the law of insurance, is parcel of the contract, and, in the absence of a statute to the contrary, invalidates the obligation, if not strictly true, even though the thing warranted does not affect the risk.

4. —————: —————: **Effect of Statute.** The effect of untrue warranties is now controlled by section 7890, Revised Statutes 1899, which provides that no misrepresentation made to obtain and secure a policy of life insurance shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy has become due and payable; and whether it so contributed in a case shall be a question for the jury.

5. —————: **Application: Warranty.** Where, in answer to a question as to her health, propounded in the application for life insurance, insured stated it was good, such question and answer became part of the contract of insurance and were a warranty that insured was in good health at the time.

6. —————: **Condition Precedent: Provision in Policy.** A provision in a life insurance policy that no claim would be paid by the insurer unless insured was in sound health at the time the policy took effect is not a condition precedent to the taking effect of the policy, in the strict sense of that term, and such is the sense to be attached when a forfeiture is invoked.

7. —————: **Condition Precedent and Warranty.** The terms "Warranty" and "Condition Precedent" are used interchangeably in insurance law, and in many instances an insurance warranty is nothing more or less than a condition precedent to

the taking effect of the contract, as when the insured warrants the premium will be paid by the date of the policy.

8. ————: **Warranties: Materiality: Statute.** Section 7890, Revised Statutes 1899, which provides that no misrepresentation made in obtaining a policy of life insurance shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy has become due, applies to a clause in a life insurance policy that insurer would pay no claim unless on the date of the contract insured was in sound health as well as to warranties contained in the application for insurance. Such clause would not therefore defeat a recovery, even though insured was not in sound health at the time policy became effective, unless the unsound state of her health contributed to or caused her death.

9. **EVIDENCE: Hearsay: Doctor's Certificate.** In an action on a life insurance policy, the certificate of a doctor as to the cause of death of insured, which was offered in evidence, was properly excluded, because hearsay.

10. **TRIAL PRACTICE: Evidence: Exclusion: Offer of Proof.** Where evidence is offered and excluded, the propriety of the exclusion will not be considered on appeal, unless a statement was made or tendered as to what was proposed to be proved.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*Haff & Michaels* and *Woodruff & Mann* for appellant.

(1) The provision in the policy that no claim would be paid thereon unless the insured were in sound health on the date thereof is a valid provision and is not affected by section 7890, Revised Statutes 1899. Welch v. Guar. F. L. Soc., 81 Mo. App. 38; McAndiless v. Insurance Co., 45 Mo. App. 584; Insurance Co. v. Howle, 62 Ohio St. 204; Barker v. Insurance Co., 188 Mass. 542; Packard v. Insurance Co., 72 N. H. 1; Carmichael v. Ins. Co., 101 N. Y. Sup. 602; Insurance Co. v. Willis, 76 N. E. 506; Insurance Co. v. Betz, 99 S. W. 1140;

Stringham v. Insurance Co., 44 Ore. 447; Langstaff v. Insurance Co., 69 N. J. L. 54. (2) Knowledge by the insured that his health is unsound is immaterial, as is also the question whether the ailment which rendered his health unsound at the date of the policy caused or contributed to his death. Murphy v. Insurance Co., 205 Pa. St. 452; Kern v. Legion of Honor, 167 Mo. 487; Thompson v. Insurance Co., 13 N. D. 444; Insurance Co. v. Howle, 62 Ohio St. 204; Barker v. Insurance Co., 188 Mass. 542; Insurance Co. v. Betz, 99 S. W. 1140; Summers v. Insurance Co., 90 Mo. App. 699. (3) The burden was on plaintiff to prove that deceased was in sound health on the date of the policy. R. S. 1899, sec. 634; St. Louis v. Kruikshank, 16 Mo. App. 499; Reese v. Life Assn., 111 Ga. 482; Ormond v. Life Assn., 96 N. C. 158; Oliver v. Insurance Co. (Va.), 33 S. E. 536; Insurance Co. v. Betz, 99 S. W. 1140; Kipp v. Insurance Co., 41 App. Div. (N. Y.) 300; Thompson v. Insurance Co., 13 N. D. 444. (4) Plaintiff's testimony that Pearl Salts was in "good health" was a mere conclusion and not sufficient to meet the burden cast upon him. 17 Cyc. 87; Insurance Co. v. Betz, supra; Kipp v. Insurance Co. (N. Y.), 41 App. Div. 300. (5) This court should reverse the judgment of the lower court and enter judgment here for the defendant. R. S. 1899, sec. 866; Kipp v. Insurance Co., supra; Insurance Co. v. Betz, supra; Friesz v. Fallon, 24 Mo. App. 439. (6) Upon inquiry as to whether or not, in fact, insured was in good health on the date of the policy, the report of defendant's medical inspector was not binding on defendant and does not avail the plaintiff. Packard v. Insurance Co., 72 N. H. 1; Gallant v. Insurance Co., 167 Mass. 79; Thompson v. Ins. Co., 13 N. D. 444. (7) Plaintiff, by his directions in the proofs of death to "see doctors' certificates" as to cause of death, and by his bringing suit, and by testifying as to deceased's condition of health, waived the privilege of the statute and rendered competent Dr. Bruton's certificate and his testimony. State v. Collins,

67 Mo. 380; Satterlee v. Bliss, 36 Cal. 489; Cramer v.
Hunt, 154 Mo. 112; Gallant, v. Insurance Co., 167 Mass.
79; Proppe v. Insurance Co. (N. Y.), 13 Misc. 266;
Chinnery v. Insurance Co., 15 App. Div. (N. Y.) 515;
Bentz v. N. W. Aid Ass'n, 40 Minn. 202; Keller v. In-
surance Co., 95 Mo. App. 94; Thompson v. Ish, 99 Mo.
175; Highfill v. Railroad, 93 Mo. App. 223; Webb v.
Railroad, 89 Mo. App. 611; Insurance Co. v. Brubaker
(Kan.), 96 Pac. 65; Linz v. Insurance Co., 8 Mo. App.
363; Gartside v. Insurance Co., 76 Mo. 446; Weitz v.
Railroad, 53 Mo. App. 43; Howard v. Insurance Co., 18
Misc. 74; Insurance Co. v. Ward, 140 U. S. 88; Insur-
ance Co. v. Newton, 22 Wall. 32; Boylan v. Insurance
Co., 18 Misc. 444; Hanna v. Insurance Co., 150 N. Y.
526; Kipp v. Insurance Co., 41 App. Div. 298; Insurance
Co. v. Milick, 65 Fed. 178.

. *Len Walker* and *W. D. Tatlow* for respondent.

(1)   The policy contains two warranties in the na-
ture of a condition precedent, referring to the health of
the deceased, identical in legal effect with the sole ex-
ception that one of the warranties, to-wit, the first, ap-
plies to the condition of her health at the date of the is-
suance of the policy, and the other at the date of the ap-
plication.   This is the fixed, consistent and settled hold-
ing of the Supreme Court of this State, and is no longer
a debatable question.   Loehner v. Insurance Co., 17 Mo.
247; Mers v. Insurance Co., 68 Mo. 127; Aloe v. Insur-
ance Co., 147 Mo. 531.   (2)   These warranties relating
to the condition of her health, although contractual in
form, are by the repeated rulings of the Supreme Court
of this State, by section 7890, Revised Statutes 1899,
transformed into mere representations which the de-
fendant must not only show are untrue, but that the
subject-matter thereof contributed to or produced the
death, and unless it be so shown to the satisfaction of
the jury that such representations although false, con-

stitute no defense.   Jacobs v. Insurance Co., 146 Mo. 523; Deem v. Insurance Co., 86 Mo. App. 459; Schuerman v. Insurance Co., 165 Mo. 641; Jenkins v. Insurance Co., 171 Mo. 375; Williams v. Insurance Co., 189 Mo. 71; Keller v. Insurance Co., 198 Mo. 440; Insurance Co. v. Riggs, 203 U. S. 241.   (3)   Dr. Bruton was incompetent as a witness under the statute of this State to testify concerning any information which he acquired as a physician or a surgeon, from the deceased, while attending her in a professional capacity, and which was necessary to enable him to prescribe for her as a physician.   R. S. 1899, sec. 4659.   (4)   The court did not err in refusing to permit the following question to be answered: "Q.   State, from your constant observation now there in that store, whether Pearl Salts was or was not in sound health in the month of June, 1907?"   Reed v. Insurance Co., 58 Mo. 425.   (5)   There being no offer of proof under the repeated rulings of the courts of this State, the cause cannot be reversed for failure to permit him to answer this question, even if it was a proper question.   Wilson v. Board, 63 Mo. 137; Bank v. Aull, 80 Mo. 199; Nelson v. Lock, 59 Mo. App. 637; Jackson v. Hardin, 83 Mo. 187; St. Louis v. Babcock, 156 Mo. 148; Krauberger v. Roiter, 91 Mo. 408; Ruschenberger v. Railroad, 161 Mo. 70; State v. Marlin, 124 Mo. 523; Berthold v. O'Hara, 121 Mo. 98.

Plaintiff sues as administrator of his deceased daughter, Pearl Salts, and on a policy of insurance issued to her by defendant, June 17, 1907.   In the answer it is alleged:   The policy provided no claim would be paid by defendant unless the insured was in sound health at the date of the policy; on said date, for several months prior thereto, and on to her death the insured, Pearl Salts, had been and continued to be afflicted with tuberculosis of the lungs, or consumption, a fact which defendant did not know until after it had been furnished by plaintiff with proof of loss on or

about March 10, 1908; that defendant would not have
issued the policy had it known the real condition of the
health of the insured; wherefore, in view of the premises
the policy never became a binding obligation.    The
above defense is founded on a proviso in the policy itself,
and a second one is founded on statements in the appli-
cation made by the insured that the condition of her
health when she applied for the policy was good, that
she never had been seriously ill, or suffered from any
physical infirmity, a habitual cough, spitting of blood
or consumption, which representations were made in the
application in answer to questions, and the insured ex-
pressly warranted the statements to be true and agreed
they should form the basis of the contract for insurance;
in truth the statements were all false, and Pearl Salts
when she applied for the policy was in bad health,
physically defective and infirm, suffering from spitting
of blood, habitual cough and consumption, had been
seriously ill from consumption, spitting of blood and
habitual cough and thereafter was so afflicted contin-
uously; the policy was issued believing her representa-
tions were true; and otherwise would not have been is-
sued; the said representations were not only false in
point of fact, but the death of the insured was caused
or contributed to by the malady with which she was af-
flicted at the time, to-wit: consumption or tuberculosis;
the policy expressly provided it should be void if any
representation on which it was granted was not true;
wherefore, defendant prayed judgment and to be dis-
missed with costs.   A general denial was filed in reply.
Among the statements of the application were these:

"What is the present condition of health? Good. . . .

"I hereby apply for insurance for the amount here-
in named, and I declare and warrant that the answers
to the above questions are complete and true, and were
written opposite the respective questions by me, or
strictly in accordance with my directions.   I agree that
said answers, with this declaration, shall form the basis

of a contract of insurance between me and The Prudential Insurance Company of America, and that the policy which may be granted by the company in pursuance of this application, shall be accepted subject to the conditions and agreements contained in such policy; I further agree that no obligation shall exist against said company on account of this application, although I may have paid premiums thereon, unless said Company shall issue a policy in pursuance thereof, and the same is delivered to me.

"(Signature of applicant)   PEARL SALTS.

"I certify that I have this 10th day of June, 1907, personally seen and questioned the applicant herein named, and I recommend the company to accept the risk.

C. E. BADGLEY, Agent."

The policy contained the following terms:

"If the insured shall die within six months from the date hereof, one-half of the above benefit will be paid. After six months from its date the Policy will be in force for the full benefit.  .  .  .

"1st.   PRELIMINARY PROVISION.—No claim will be paid on this policy in case of the death of the insured before the date hereof, nor unless on said date the insured was alive and in sound health.  .  .  .

"3d.   POLICY WHEN VOID.—This policy shall be void if there be in force upon the life of the insured an industrial policy previously issued by this company, unless the policy first issued contains an endorsement, signed by the President or the Secretary, authorizing this policy to be in force at the same time; *or if any of the representations upon which this policy is granted be not true*" (italics ours); "or if the person insured is under twenty-two years of age next birthday," etc.

"If for any cause this policy be or become void, all premiums paid hereon shall be forfeited to the company except as provided herein.  .  .  .

"9th.  INCONTESTABILITY.—If the insured shall die one or more years after the date hereof, and if all due premiums shall have been paid, and full proof of death given to the company within one year next after the death of the insured, this policy shall be incontestable."

The case was tried and the jury instructed on the theory that even if deceased was not in sound health at the date of the policy, or if she misrepresented the state of her health in the application for insurance, nevertheless plaintiff was entitled to a verdict, unless she was not in sound health at the time the policy was issued and the condition of her health at said time caused or contributed to her death, or some fact about her health or physical state was misrepresented in the application and the fact misrepresented caused or contributed to her death.  Defendant's main  point is the insured had consumption as far back as the spring of 1907.  Hence the interval of a week between the date of the application and of the policy is unimportant, as it is not claimed she contracted the disease in said interval.

GOODE, J. (after stating the facts).—The contention is put forward by defendant that the entire evidence showed beyond inference to the contrary, the insured was not in sound health, but had tuberculosis of the lungs when the policy was granted, and showed further, the statements made by her in her application for the policy and warranted to be true, were not true. We will dismiss this contention by saying the record teems with evidence to prove the insured was not afflicted with tuberculosis, but died from excessive use of morphine, or a congested condition of the liver due to that habit.  The doctor who attended her in her last illness so testified, and there is much other testimony to the same effect.  There was also abundant evidence from which the jury might have found that when deceased applied for insurance and also when the policy was issued, she was not suffering from any disease, spit-

ting of blood, cough, physical defect or infirmity, and never had been seriously sick. In other words, might have found the statements in the application were true. It is worthy of note in this connection, not as constituting a waiver of any right of the company, but as an item of evidence, that defendant's agent solicited deceased to take out a policy and defendant's regular examining physician, who had examined risks for years, passed her as a good average risk, specifically stating her lungs were not diseased in the report of his examination sent to the company. We overrule the assignment of error based on the supposed conclusive proof the insured was not in sound health, but had consumption, when the policy was written, or similar proof the statements in her application were false, citing as an opposite authority Kelly v. Insurance Co., 198 Mo. 440.

2. We do not understand counsel for defendant to contest the proposition that even though there was a misrepresentation by the insured in the application regarding the state of her health, this fact would not preclude recovery unless the matter misrepresented caused or contributed to her death. Whatever representations were made were part of the policy, according to the terms of both the application and the policy itself. The former said the statements made in it were true, should form the basis of the contract of insurance, the policy should be subject to the agreements and conditions contained in it, and no obligation should arise against the company on account of the application and payment of premiums, until the policy had been issued and delivered. One clause of the latter instrument said it should become void if any representations on which it was obtained were not true, thus referring to the application in a way to show the intention was to embrace it as part of the contract. [Angell, Insurance, sec. 141; Kerr, Insurance, p. 326; 1 May, Insurance, secs. 158, et seq.] The statements in the application were warranties. A warranty in the law of insurance is not mat-

ter collateral to the contract, stated as an inducement to the other party to enter into the agreement, as a representation is. It is parcel of the contract, and, in the absence of a statute to the contrary, invalidates the obligation if not strictly true; and this though the thing warranted does not affect the risk. [Aloe v. Insurance Co., 147 Mo. 561; Angell, Insurance, sec. 140; Bliss, Life Ins. (2 Ed.), sec. 34; Bacon, Ben. Soc. (3 Ed.), sec. 194; 1 May, Insurance (4th Ed.), sec. 156.] "The effect of untrue warranties is now controlled in this State by the statute which declares no misrepresentation made to obtain and secure a policy of life insurance shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable; whether it so contributes in a case shall be a question for the jury." [R. S. 1899, sec. 7890.] The word "misrepresentation" used in the statute, has been construed to embrace statements in the nature of a warranty, which are introduced into the policy as part of it. [Jacobs v. Assn., 146 Mo. 523; Jenkins v. Insurance Co., 171 Mo. 375; Keller v. Id., 198 Mo. 440.] One question propounded to the insured in the blank application related to the present state of her health, and she answered it was good. The question and answer became a term of the contract of insurance, and were a warranty that she was in good or sound health at the time. That is to say, they were equivalent to the clause of the policy requiring her to be in "sound health" at the date of it. While counsel for defendant concede that if the warranty regarding the state of deceased's health when she made the application was false, and she was not then in good health, the misrepresentation would have no effect on the contract, unless the state of her health at said time caused or contributed to her death seven months afterwards, they contend, nevertheless, if she was not in sound health on June 17th, when the policy was delivered, there can be

no recovery; and this though her health at said date had nothing to do with her death, and even though she was unaware her health was impaired. They contend the statute takes effect only on misrepresentations made in the application for insurance and not on conditions and stipulations contained in the policy. This cannot be true in full measure, because when the contract is worded like the one at bar, statements in the application are as much part of the policy after the latter is executed as any other condition of the instrument. The distinction really attempted is between a warranty and a condition precedent. The argument is this: The provision of the policy that no claim would be paid unless the insured was alive and in sound health when delivered is a condition precedent, and if she was not then in sound health, the policy never took effect as a contract. Before going into this supposed distinction between conditions precedent and warranties, we will scrutinize the language of the clause relied on to see if, in truth, it purports to be a condition precedent to the taking effect of the policy. The language did not say the contract shall not take effect unless she was in sound health, but merely said no claim would be paid by the company if she was not; whereas other clauses of the policy provided expressly it should be void if certain things were not done. It is worthy of note too that one clause declared if the insured died in one or more years after its date, with all premiums paid, the policy should be incontestable. How can that clause be construed harmoniously with the one invoked by defendant, if the latter prevented the policy from taking effect unless the insured was in sound health at the date of it? If it never took effect, how could it become incontestable in any contingency? The idea that a contract not in existence should become incontestable, is elusive. In truth the clause relied on by defendant is no condition precedent in the strict sense of that term, and such is the sense to be attached when a forfeiture is invoked.

"A condition precedent calls for the performance of some act or the happening of some event, after the terms of the contract have been agreed upon, before the contract shall take effect; that is, the contract is made in form, but does not become operative as a contract until some future act is performed or some subsequent event occurs." [4 Ency. Law, p. 627.; Redman v. Insurance Co., 49 Wis. 439.] This is the technical definition, but the terms "warranty" and "condition precedent" are used interchangeably in insurance law, and in many instances an insurance warranty is nothing more or less than a condition precedent to the taking effect of the contract; as when the insured warrants the premium will be paid by the date of the policy. The frequent identity of the two terms for all purposes of determining liability on a policy in a given case is assumed in numerous treatises and decisions; the assumption sometimes being tacitly applied, and at other times a warranty is spoken of as a condition precedent or *vice versa*. [Angell, Insurance, sec. 142; 1 May, Insurance, sec. 156; Bliss, Life Insurance (2 Ed.), sec. 34; 1 Bacon, Ben. Soc. (3 Ed.), sec. 194; Mers v. Insurance Co., 68 Mo. 127; Aloe v. Insurance Co., supra; Robertson v. French, 4 East. 135; Vose v. Insurance Co., 6 Cush. 47; Nat. Bank v. Id., 95 U. S. 678; Jefferson Ins. Co. v. Cotheal, 7 Wend. 72; also see numerous decisions cited in note 1, p. 408, 1 Bacon, Ben. Soc.] In the Mers and Aloe cases, it was said: "Where a warranty is part of a contract it must be strictly complied with. 'It is in the nature of a condition precedent, and no inquiry is allowed into the materiality or immateriality of the fact warranted.' " It would be subtle to the last degree to distinguish between clauses originally inserted in a policy to make certain facts conditions precedent (*e. g.* payment of premium by a given day or the sound health of the insured at the date of the policy) and warranties of those facts in the application which were absorbed in the policy as part of the contract. Such

a distinction could have no solid foundation in reason or justice. Counsel for defendant have cited us in their brief to these cases as sustaining the distinction: Packard v. Insurance Co., 77 N. H. 1; Carmichael v. Id., 101 N. Y. Supp. 602; Insurance Co. v. Betts (Texas), 99 S. W. 1140; Stringham v. Insurance Co., 44 Ore. 447; Langstaff v. Id., 69 N. J. L. 54; Murphy v. Id., 205 Pa. 444; Thomas v. Id., 13 N. D. 444; McAndiless v. Id., 45 Mo. App. 584; Met. Life Ins. Co. v. Howle, 62 Ohio St. 204; Barker v. Insurance Co., 188 Mass. 542. All of those authorities, except the last three, were decided without reference to a statute like ours, and this is enough to discriminate them from the present case; but a critical study of them will reveal that in some, if not all, of the opinions the proposition that a warranty and a condition precedent in a policy has identical legal consequences was taken for granted. Indeed, in several of the cases the matter treated as a condition precedent was contained only in the application and not in the policy itself, except in so far as it was drawn into the latter by the application being declared part of it; whereas in other cases the matter appeared in both instruments. [Carmichael v. Insurance Co., Langstaff v. Insurance Co., Insurance Co. v. Betts, supra.] Our essential inquiry is not whether, in the absence of a statute, an unfulfilled warranty of the existence of a certain fact or condition precedent, at the date of the policy, would avoid the contract or prevent it from taking effect; but whether if the insured warranted the existence of a fact (e. g. sound health at the date of the policy) and the policy also said no claim would be paid unless the insured was in sound health at said date, it is an accurate interpretation of our statute on the subject to say it will allow recovery notwithstanding the warranty was untrue, if the fact misrepresented did not contribute to the loss, but will not allow recovery if the policy elsewhere provided against liability if the fact did not exist, even though its non-existence had nothing

to do with the loss. To our minds this construction of
the statute is not called for by the language in which it
is framed and would go far toward defeating its purpose
and destroying its usefulness. The case of McAndiless
v. Insurance Co., supra, does not help defendant, be-
cause it conclusively appeared the insured had con-
sumption at the date of the policy and of the warranty
and died with it. Hence the court had no occasion to go
into the question of the supposed difference in effect
of a breach of conditions written in the policy itself
and a breach of those introduced into it by making the
application part of it. The decisions in Insurance Co.
v. Howle and Barker v. Insurance Co., supra, lend
some support to defendant's proposition and are im-
pressive because pronounced by eminent courts. But
the statutes dealt with differ in phraseology from ours.
The Massachusetts statute provided no misrepresenta-
tion or warranty "made in the negotiation of the con-
tract or policy of insurance," shall be deemed material
or avoid the policy, unless made with the intent to de-
ceive, or unless it increases the risk. [2 Mass. Rev.
Laws, p. 1128, sec. 21.]    Said statute relates   to
misrepresentations or warranties made in negotiating
for the policy. The Ohio statute says no answer to
an interrogatory by an applicant in his or her applica-
tion for the policy shall bar the right to recover on a pol-
icy issued on the application, unless falsely and fraud-
ulently made and material, etc. [R. S. Ohio, sec. 3625.]
Said statute relates to answers to interrogatories in the
application. In view of the language used, the courts of
the respective states held the statutes did not relate to
clauses of the contract itself, but to negotiations an-
terior to the contract. Our statute simply says no mis-
representation made in obtaining or securing a policy of
insurance, etc. These words less clearly import that the
statute has reference only to what was represented prior
to the date of the contract, and not to the contents of the
policy itself. It is not our task to criticise the interpre-

tation of their statutes by the courts of those states. What we decide is that the same interpretation cannot rationally be given to our statute; for thereby we would sanction the very mischief the Legislature intended to obviate—*i.e.* avoidance of liability because of immaterial errors in representations and warranties. Such defenses based on warranties as the statute aims to exclude would be introduced into the policy as conditions precedent. Perhaps we would have been intimidated by the authority of those courts were we not supported by the judgment of a tribunal of equal eminence, a judgment given, too, in passing on our own statute. In Insurance Company v. Riggs, 203 U. S. 243, the action was on two policies of life insurance issued in this State and containing the following provision: "This policy shall not be in force until the first premium is paid, and the policy delivered to and accepted by the insured while in good health. At any time when this policy has been continuously in force for more than one year, it shall be incontestable except for fraud and nonpayment of premium herein, if the age of the insured has been correctly stated in the application." The application was made part of the policy, its statements were warranted to be true, and it contained a stipulation that no obligation should arise under it until the policy was issued and delivered, the applicant being at the time in good health and the first premium paid. Every answer was warranted to be material to the risk. The application also warranted the insured was not affected with any disease or disorder. It will be perceived that contract was not materially different from the one at bar. The company denied liability on the ground the answers in the application were untrue and known to be by the applicant. The United States Supreme Court held the Missouri statute governed the case, was not unconstitutional, the company could not escape liability by reason of the representations of the insured unless the jury found the matters misrepresented con-

tributed to the loss. The opinion did not discuss the supposed distinction between warranties and conditions precedent in the policy. Nevertheless, it was ruled the circuit court rightly refused to grant an instruction that the plaintiff could not recover unless the policies were not delivered and accepted while the insured was in good health. That judgment, together with those of the Missouri Supreme Court first cited supra, justify us in holding this defendant cannot evade payment of the policy by virtue of the clause that it would pay no claim unless on the date of the contract, the insured was in sound health, if it did not appear the unsound state of her health at the time contributed to or caused her death—a question for the jury. The effect to be given to the clause relied on by defendant, so as to bring it into unison with the rest of the contract and the law is to hold it extends the statement in the application regarding the good health of the applicant, to the date of the contract, and takes away the right to indemnity if, on said date, she was ill and her illness caused or contributed to her death.

3. The insured died February 21, 1908. Some time in March or April, 1907, prior to the date of the policy, a physician had treated her professionally. This physician was called as a witness by defendant and was asked to state, independently of any examination he had then made and solely from his observation of the insured in the street and other places, whether she was in sound health in June, 1907. The answer to this question was excluded because the witness had treated the insured professionally and he could not separate or distinguish his opinion formed in treating her from his opinion derived solely from observing her on the street and non-professionally. The certificate of this doctor as to the cause of her death was also offered by defendant and excluded. It is insisted plaintiff had waived the incompetency of the witness, and particularly of his certificate of death. One ground of waiver

is that in the proof of loss plaintiff had written: "See Dr. ctf." Three other certificates to which that notation referred, were made out by as many physicians, and the plaintiff had nothing to do with getting the excluded certificate, which was incompetent against him because it would have been hearsay evidence. It was not one of the certificates referred to in the proof of loss.

As to the refusal to permit said witness to tell his opinion, not formed in the course of professional treatment, of the health of deceased, suffice to say no statement was made or tendered of what was proposed to be proved by the witness. [Bank v. Wills, 79 Mo. 275; Bank v. Aull's Admr., 80 Mo. 199.]

The judgment is affirmed. All concur.