SECURITY BENEFIT LIFE INSUR-
ANCE COMPANY, Appellant,

v.

Helen M. JACKSON, Appellee.

No. 17180.

United States Court of Appeals
Eighth Circuit.

June 13, 1963.

Granville L. Gamblin, Clayton, Mo., for appellant; Ralph M. Lake, Clayton, Mo., with him on the brief.

Edward D. Weakley, St. Louis, Mo., for appellee; Boyle, Priest, Elliott & Weakley, Howard Elliott and F. G. Armstrong, St. Louis, Mo., with him on the brief.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant, Security Benefit Life Insurance Company, from a judgment rendered against it based upon a jury verdict on a policy of life insurance it issued upon the life of Louis L. Jackson in which the plaintiff, Helen M. Jackson, is beneficiary. Jurisdiction, based upon diversity of citizenship, is established.

Plaintiff, in paragraph 2 of her complaint, alleges:

"On the 29th day of August, 1957, in consideration of the payment by Louis L. Jackson to defendant of the premium of Three Hundred Forty-seven and 00/100 Dollars ($347.00) semi-annually during the said Louis L. Jackson's life, the defendant, by its agents duly authorized thereto, made their policy of insurance in writing, a verified copy of which is annexed and made a part of this petition and marked 'Exhibit A', and thereby insured the life of Louis L. Jackson in the sum of Ten Thousand and 00/100 Dollars ($10,000.00), payable to the plaintiff on the death of the said Louis L. Jackson."

In answer thereto, defendant states:

"Answering paragraph numbered 2, defendant admits the allegations therein contained excepting that it denies the averments that defendant thereby insured the life of Louis L.

Jackson in the sum of Ten Thousand ($10,000.00) payable to the plaintiff on the death of the said Louis L. Jackson."

The policy provides that the application, copy of which is attached to the policy, shall be a part of the insurance contract. The application specifies that it shall become a part of the policy, and further provides: "the insurance applied for shall not take effect unless and until this application is approved by the Company at its Home Office and a full first premium, according to the Company's published rates in use on this date, has been paid while I am in good health." The application is dated July 18, 1957, and signed by the insured. The agreed premium is $667.30 payable annually, and such premium was not paid at the time of the application.

■ Defendant's primary defense is that Mr. Jackson was not in good health at the time the first premium was paid, as required by the insurance contract, but that he was at the time of such payment suffering from cancer, which disease caused his death. Defendant in its answer asserted defenses of false representation and fraud but such defenses are not relied upon on this appeal and hence require no consideration.

The death certificate introduced in evidence by the plaintiff shows that the insured died on July 1, 1958, and that the death was caused by adenocarcinoma of right pleura and lung, primary site unknown, and that the interval between onset and death was one year.

The insured had been under medical treatment by Dr. Birdsall for a complaint of cough and pain in the lower right chest at least since June 27, 1957. He was hospitalized for treatment and examination from July 23 to July 28, 1957. No evidence of cancer was then discovered and it was thought that the difficulty was probably a viral bronchial pneumonia.

When the insured again saw Dr. Birdsall on August 27, 1957, the doctor was amazed to find a considerable amount of fluid in the right chest. He ordered the patient's return to the hospital. Dr. Lucido, a chest surgeon, was called in. On August 30, he did a pleural tap. The fluid withdrawn contained cancer cells. Dr. Lucido testified that when cancer is found in the pleural fluid, it is a far advanced cancer and would have been present in terms of months. While there is some uncertainty as to the time it takes cancer to develop, all doctors testifying stated with certainty that cancer was present on August 29, 1957, the date plaintiff in her petition claimed the policy became effective. It is undisputed that the cancer discovered on August 30 was the cause of insured's death.

The policy states its effective date to be August 6, 1957. The application had been approved by the company prior to August 6 and on that date it was registered with the Kansas Insurance Commissioner. Plaintiff testified that at the insured's direction she paid the insurance premium by check, but she does not fix the date of the payment or produce the check. Mr. Cranston, the insurance agent selling the policy, testified that the policy was delivered when he picked up the premium check. He states that this occurred sometime late in August.

The application calls for annual premiums. A policy delivery statement in evidence, dated August 6, 1957, calls for a premium of $667.30 and contains the statement: "Policy must NOT be delivered until full amount of initial premium has been collected." Mr. Cranston testified that before he could accept a semiannual premium payment, a policy amendment was required, which amendment was prepared and executed, the body thereof reading:

"It is agreed that this Policy is amended to acknowledge payment of a first premium of $347.00, which payment will maintain the Policy in force until Feb. 6, 1958. On that date and at

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(semiannual-quarterly-monthly) intervals thereafter, a like sum shall

be payable in accordance with the terms of the Policy,

"IN WITNESS THEREOF, Security Benefit Life Insurance Company has caused this Supplement to become effective as of the date shown above.

> "Dean L. Smith
> "Secretary
"Countersigned: Louis L. Jackson
> "Policy Owner
> "August 29, 1957
> Date"

Mrs. Jackson testified that her husband's genuine signature appears on the instrument just described but states that the date, August 29, 1957, is not in his handwriting. There is no evidence showing that the instrument was signed or delivered on any date other than August 29.

While a number of errors have been asserted by defendant as a basis for reversal, we shall direct our attention to the issue we deem to be dispositive of this appeal, to wit, defendant's contention that the court erred in not sustaining its motion for directed verdict made at the close of all of the evidence and its motion to have judgment entered n. o. v. in accordance with its motion for directed verdict. The motion reads:

> "Comes now the defendant, at the close of all the evidence, and moves that the court direct the jury to return a verdict in favor of the defendant, and for grounds for this motion defendant states that the evidence conclusively shows that the insured, Louis Jackson, was suffering from cancer when he paid his first premium on August 29, 1957, and, therefore, was not in good health when he paid his first premium, and the evidence further conclusively shows that this same condition of cancer was the direct cause of his death on July 1, 1958."

■ We need not linger upon plaintiff's contention that the foregoing motion does not adequately raise the issue of the sufficiency of the evidence to support a verdict for plaintiff. The motion sharply calls to the attention of the trial court defendant's contention that the evidence conclusively establishes that insured was suffering from cancer when he paid his first premium on August 29, 1957, that such cancer was the cause of death, and that the insured did not meet the policy requirement that he be in good health at the time of payment of the first premium. No more is required.

■■ We have uniformly recognized and followed the rule that disputed fact issues should be decided by the jury. In Hanson v. Ford Motor Co., 8 Cir., 278 F.2d 586, 596, Judge Blackmun clearly states the standards to be applied in testing the sufficiency of the evidence to support a verdict as follows:

> "[I]n passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it."

■ The court is required to sustain a motion for directed verdict where there is no substantial evidence to support a finding essential to entitle the adverse party to prevail. Peebles v. Missouri Ins. Co., Mo.App., 226 S.W.2d 363; Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W.2d 333.

■■ The policy of insurance here involved was applied for and delivered in Missouri. Hence Missouri law controls.

44 C.J.S. Insurance § 271 states:

> "A stipulation or agreement that a policy of life insurance shall not

take effect or bind the insurer unless the first premium is paid while the applicant is alive or in good or sound health will be given effect."

To like effect, see 1 Appleman Insurance Law & Practice, § 151 et seq.

The foregoing authorities, setting out supporting cases, point out that the policy provision requiring good health at the time of the payment of the first premium is a condition precedent to liability. See Braman v. Mutual Life Ins. Co., 8 Cir., 73 F.2d 391, 393; Jensen v. New York Life Ins. Co., 8 Cir., 59 F.2d 957.

Some of the Missouri cases appear to treat the failure to meet the good health provision as a breach of warranty, rather than of condition precedent. Toler v. Atlanta Life Ins. Co., Mo.App., 248 S.W. 2d 53; Kirk v. Metropolitan Life Ins. Co., supra; Salts v. Prudential Ins. Co., 140 Mo.App. 142, 120 S.W. 714. The court in the last cited case concedes that many courts have treated the good health provision as a condition precedent. The court elects to treat such a provision as a warranty and, pursuant to what is now V.A.M.S. § 376.580, limits policy defenses to material misrepresentations which have actually contributed to the loss insured against.

We need not pause to consider the foundation upon which the Missouri law is based. We are concerned only with the applicable Missouri law as it applies to our present problem. The court in its instructions thus states the law:

"The Court further instructs the jury that by the terms of the contract of insurance, which is involved in this case, the policy did not become effective unless and until the first premium was paid while the insured was in good health. Under the law the term 'good health' means that the insured, on the date that the policy was to go into effect, was not then suffering from the disease which later caused his death.

"Therefore, you are instructed that if you find that the first premium of the policy in question was paid on August 29, 1957, and that on that date the insured, Louis Jackson, was suffering from a serious illness, namely, a condition of cancer which manifested itself in his chest, and if you further find that the said disease of cancer continued and directly caused the death of the said Louis L. Jackson on July 1, 1958, then you are instructed that plaintiff is not entitled to recover and your verdict must be in favor of the defendant.

"You are further instructed that this is the law even though Mr. Jackson, on August 29, 1957, was wholly unaware that he had the condition which was the cause of his death."

We, of course, recognize that the correctness of the instructions given have no bearing upon defendant's right to a directed verdict and that upon such issue it is necessary for the trial court and for this court to apply established Missouri law. We do believe, however, that it is reasonable to assume that the trial court in passing upon the directed verdict applied the law as stated in its instructions. We believe the court in its instructions above set out correctly interprets the Missouri law. Toler v. Atlanta Life Ins. Co., supra; Peebles v. Missouri Life Ins. Co., supra; Hendricks v. National Life & Accident Ins. Co., 240 Mo.App. 557, 210 S.W.2d 706; Kirk v. Metropolitan Life Ins. Co., supra; Burgess v. Pan-American Life Ins. Co., Mo. Sup., 230 S.W. 315.

■ It makes no difference in the application of the good health clause whether or not the insured knew at the time the insurance became effective whether he had a disease which might contribute to his death. In settling this issue, the court in the Kirk case states:

"That stipulation is a part of the contract which the parties had a right to and did make. The insurer agreed to assume liability only upon condition that the insured should

*be,* not merely believe herself to be, in sound health when the policy was issued, and the premium was fixed upon that basis. Had the insurer known that the applicant for insurance was afflicted with a disease that probably would, as it did, soon cause her death, it doubtless would not have issued the policy. To hold in such a case that the statute makes immaterial and ineffectual a misrepresentation relied upon by the insurer, even though the matter misrepresented actually contributed to the event on which the policy is to become payable, unless the insured knew or in the opinion of the court or jury should be presumed to have known that the representation so made and relied upon and stipulated in the policy as a condition upon which the risk was assumed was false, would be to read into the statute by construction something its language does not say and to impose upon the insurer a risk it did not agree to assume and by the express terms of the contract declined to assume." 81 S.W.2d 343–44.

■ On the question of resolving conflicts with respect to the effective date of a policy, Hampe v. Metropolitan Life Ins. Co., Mo.App., 21 S.W.2d 926, 927–28, states:

"For many years the Missouri courts, standing somewhat alone upon the question, have held that, where an insurance contract provides that it shall not become effective until the happening of certain contingencies, such as the delivery of the policy during the lifetime or good health of the applicant and the payment of the first premium, but elsewhere recites a prior date of issue or due date, it is the date of delivery and payment which marks the beginning of the effectiveness of the policy, and determines the time when each succeeding premium shall be paid. (Citations of supporting cases omitted.)

"This ruling is founded upon the theory that where there is no liability, there can be no insurance; * * *."

In Prudential Ins. Co. of America v. Burch, 8 Cir., 268 F.2d 159, 167, we set out and approve the Missouri law as set out in the foregoing citation.

■ The burden is, of course, upon the defendant to establish the affirmative defense it asserts. Here the plaintiff's proof of death included the statement in the death certificate that the duration of the fatal cancer illness was one year, which would place the origin of the disease prior to the policy application. Missouri courts on a number of occasions have held that such proof overcomes any prima facie case plaintiff may have made unless the statement in the death certificate is explained or contradicted by further evidence. In Peebles v. Missouri Ins. Co., 226 S.W.2d page 365, the court in reversing a judgment for the beneficiary states:

"It is true that plaintiff established a prima facie case by showing the issuance of the policy, the payment of the premium, the death of the insured, and that he is the named beneficiary. But such prima facie case was entirely destroyed when defendant produced in evidence the written proof of death, wherein plaintiff stated the cause of death to have been bronchial asthma, unless such admission of plaintiff was explained or contradicted by further evidence. The law to that effect is settled by the Supreme Court in the case of Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S.W.2d 333, and by this court in the case of Fields v. Metropolitan Life Ins. Co., Mo.App., 119 S.W.2d 463, and the case of Johnson v. Missouri Ins. Co., Mo.App., 46 S.W.2d 959, and by several other cases."

■ In applying the Missouri law to the facts of this case, the initial problem presented is to determine the effective date of the policy. Under the

terms of our present contract of insurance, the insurance was not to be effective until the first premium was paid. As heretofore stated, plaintiff in her complaint alleged the effective date of the policy to be August 29, 1957, which allegation was admitted by answer. Plaintiff upon this appeal seeks to establish August 6, 1957, the effective date stated in the policy, as the effective date. We believe plaintiff is bound by her pleading upon which issue was joined. Her contention that an amendment made to conform to proof permits her to establish the earlier date is without merit. Such amendment on its face only appears to be made for the purpose of raising the amount of plaintiff's claim for vexatious delay. There is nothing in the amendment to advise the court or opposing counsel that plaintiff was changing her pleading with respect to the effective date of the policy. The record as a whole, including the instructions, shows the case was tried upon the basis of August 29 being the effective date of the policy.

Moreover, under the law as heretofore set out, the effective date of a policy such as the one before us is the date of the payment of the first premium. There is no substantial evidence which would support a finding that the first premium was paid at any time prior to August 29, which is the date set out in the complaint and the date set out in the change of premium payment agreement.

■ The evidence is conclusive that the cancer first definitely found to exist on August 30 was the cause of the insured's death. The cancer discovered on August 30 was in a far advanced stage. The medical witnesses agree that the cancer existed for a considerable period prior to its discovery although they are unable to pinpoint the exact date of origin. All of the doctors, however, did unqualifiedly testify that the cancer discovered on August 30 existed on August 29. The evidence is conclusive that cancer does not develop to the state disclosed by the August 30 examination overnight.

There is no substantial evidence to support any contrary conclusion. Plaintiff's testimony that X-rays taken in April and July, 1957, did not disclose cancer and that cancer was not discovered in various tests made on the insured when hospitalized in July, 1957, falls far short of being inconsistent with or contradicting the positive medical testimony that cancer was present on August 29.

We conclude that the evidence conclusively establishes that the insured was suffering from cancer, which caused his death, on August 29, 1957, the effective date of the policy. Upon such a state of facts, it clearly appears that the plaintiff is entitled to no relief. The court committed error in denying defendant's motion for directed verdict made at the close of the evidence and for judgment n. o. v. in accordance with such motion for directed verdict.

The judgment is reversed and this case is remanded to the trial court with direction to sustain the motion for judgment n. o. v.