Flora Ann RUWITCH, Trustee,
Irrevocable Trust Agreement of
Wallace R. Ruwitch, Appellee,

v.

WILLIAM PENN LIFE ASSURANCE
COMPANY OF AMERICA,
Appellant.

WILLIAM PENN LIFE ASSURANCE
COMPANY OF AMERICA,
Appellant,

v.

Flora Ann RUWITCH, Trustee, Irrevocable Insurance Trust Agreement of
Wallace R. Ruwitch, Appellee.

No. 91–2943.

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1992.

Decided June 1, 1992.

Rehearing and Rehearing En Banc
Denied July 10, 1992.

---

Jordan Cherrick, St. Louis, Mo., argued (Steven Sanders and Thomas Dvorak, appeared on the brief), for appellant.

Robert Allen, St. Louis, Mo., argued (Richard Ahrens and Ronald Norwood, appeared on the brief), for appellee.

Before WOLLMAN and MAGILL, Circuit Judges, and LONGSTAFF,* District Judge.

WOLLMAN, Circuit Judge.

William Penn Life Assurance Company (Penn Life) appeals from a judgment against it for breach of its contract to insure the life of Wallace R. Ruwitch. We reverse and remand with directions to enter judgment for Penn Life.

## I.

In early 1989, Wallace R. Ruwitch decided to purchase a $2 million policy of insurance on his life in order to secure loans for his purchase of a new business, Dow Screw Products. After analyzing policies from several competing companies, Ruwitch chose to purchase a policy from Penn Life. Ruwitch and Penn Life's agent completed an application for insurance, naming Dow Screw as the owner and beneficiary of the policy.

The application that Ruwitch filled out had two parts. Part I required Ruwitch to furnish information such as address, date of birth, and name of beneficiary. Part II required Ruwitch to furnish information about his past and present medical condition. Included was a question, to which Ruwitch answered "no," asking whether Ruwitch had ever had cancer. Each part contained a clause stating that the information supplied was true to the best of Ruwitch's knowledge and belief. Part I stated:

The statements contained here and in Part II of this application and any supplements thereto, copies of which shall be attached to and made a part of any policy to be issued, are true to the best of my knowledge and belief and are made to induce the Company to issue an insurance policy.

Part II stated:

The statements and answers are true to the best of my knowledge and belief and are made for the purpose of inducing the company to issue insurance on my life.

Both Part I and Part II were signed by Ruwitch. Part I also contained a "good health" or "sound health" clause stating:

[N]o insurance shall take effect unless and until the policy has been physically delivered and the first full premium paid during the lifetime of the insured and then only if the person to be insured is actually in the state of health and insurability represented in Parts I and II of this application.

In addition, the policy itself contained a clause which said that "[s]tatements in the application will be considered representations and not warranties."

A few days after filling out the application, Ruwitch underwent a physical examination performed by a physician hired by Penn Life. On April 6, Ruwitch's own physician furnished Penn Life medical information based on Ruwitch's April 1988 physical. Both physicians concluded that Ruwitch was in good health.

Penn Life issued a policy to Dow Screw on April 26, and Dow Screw in turn sent the first premium check to Penn Life.[1] Ruwitch then decided, for estate tax reasons, to apply instead for a policy naming his insurance trust as the policy's owner and beneficiary. He and Penn Life's agent completed a new application for insurance on May 1. This application was the same as the first, including a statement that Ruwitch's last physical examination had taken place in April of 1988. Penn Life relied on the information previously given by Ruwitch's physician and the company's physician in deciding whether to issue the

---

* The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa, sitting by designation.

1. This first policy, though issued, was never delivered, and the premium check was returned to Dow Screw. Thus, the policy never took effect.

life insurance policy. Ruwitch gave the agent a check for the first premium on May 1, and the policy was delivered to Ruwitch on May 25.

In the meantime, Ruwitch had undergone his annual physical on April 18, 1989. He did not list this physical on the May policy application. At this examination, Ruwitch's physician discovered blood in Ruwitch's stool.[2] Further examinations during May and June resulted in the discovery, on June 20, 1989, that Ruwitch had an incurable cancerous tumor in his colon. Ruwitch died of colon cancer in March of 1990. The evidence at trial showed that the tumor had been present since at least January of 1989.

After Ruwitch's death, Penn Life filed a declaratory judgment action in federal court seeking to have the policy declared void and unenforceable. Flora Ann Ruwitch, who is Ruwitch's widow and the trustee of the insurance trust, filed an action in state court on behalf of the trust claiming that Penn Life had breached the contract of insurance. Penn Life then removed the state action to federal court, and the two actions were consolidated for trial.

Penn Life asserted two defenses to payment of the policy. It asserted first that Ruwitch misrepresented in the application that he had never had cancer. It further asserted that the good health clause precluded the policy from ever going into effect, since Ruwitch was not actually in the state of health represented in the application, that is, the tumor was already present when the policy was delivered.

Penn Life moved for summary judgment and for a directed verdict based on the good health clause. The district court denied both motions. The court submitted the misrepresentation claim to the jury but refused to instruct the jury on Penn Life's good health clause defense. The jury found against Penn Life and returned a verdict for the amount of the policy. Penn Life then moved for judgment notwithstanding the verdict, again asserting the

good health clause. The district court denied this motion, and Penn Life appeals.

II.

The standards for granting a motion for a directed verdict and for granting a motion for judgment notwithstanding the verdict are identical. *Bernoudy v. Dura–Bond Concrete Restoration, Inc.*, 828 F.2d 1316, 1319 (8th Cir.1987). We must 1) consider the evidence in the light most favorable to the nonmoving party, 2) assume any conflicts in the evidence were resolved in favor of the nonmoving party, 3) assume as proved all facts the nonmoving party's evidence tended to prove, and 4) give the nonmoving party the benefit of all favorable inferences reasonably to be drawn from the evidence. *Western Am., Inc. v. Aetna Casualty & Sur. Co.*, 915 F.2d 1181, 1183 (8th Cir.1990). We will take the issue from the jury "only if all the evidence favors the movant and is 'susceptible of no reasonable inferences sustaining the position of the nonmoving party.'" *Toombs v. Bell*, 915 F.2d 345, 347 (8th Cir.1990) (quoting *Dale v. Janklow*, 828 F.2d 481, 484 (8th Cir.1987), *cert. denied*, 485 U.S. 1014, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988)).

Penn Life contends that when applied to the undisputed facts in this case, Missouri law compels the entry of judgment in its favor on its good health clause defense. The trustee, on the other hand, contends that the statements Ruwitch made in the application were representations, not warranties. Thus, she argues, the good health clause is a defense only if Ruwitch fraudulently made false statements in the application.

We review de novo a district court's determinations of state law. *Salve Regina College v. Russell*, —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). The parties agree that Missouri law controls.

Missouri courts recognize and enforce good health clauses in insurance contracts. *See, e.g., Kirk v. Metropolitan*

---

**2.** The physician performed a screening test which analyzes a small sample of fecal material

for "occult," or hidden, blood.

*Life Ins. Co.*, 336 Mo. 765, 81 S.W.2d 333, 343 (1935); *Mahn v. American Life & Accident Ins. Co.*, 390 S.W.2d 573, 576 (Mo. Ct.App.1965); *Lipel v. General Am. Life Ins. Co.*, 192 S.W.2d 871, 875 (Mo.Ct.App. 1946). We have recognized such clauses as well. *See Security Benefit Life Ins. Co. v. Jackson*, 318 F.2d 846, 850 (8th Cir.1963) (applying Missouri law). Some of the decisions characterize such clauses as warranties, *see Kirk*, 81 S.W.2d at 343; *Toler v. Atlanta Life Ins. Co.*, 248 S.W.2d 53, 55 (Mo.Ct.App.1952); others view a good health clause as a condition precedent to the effectiveness of the insurance contract. *See Mahn*, 390 S.W.2d at 576; *Lipel*, 192 S.W.2d at 875. We do not believe that designation of the good health clause in this contract as either a warranty or as a condition precedent will make a difference in the outcome in our decision. As we read the Missouri cases, those which have characterized a sound health clause as being in the nature of a warranty would have reached the same result had they characterized the clause as a condition precedent.

Applying the standard of review set forth above, we conclude that judgment should be entered for Penn Life. The evidence relevant to the good health clause defense is not disputed. The cancerous tumor had been present in Ruwitch's body since at least January of 1989, well before Ruwitch applied for insurance. The policy was delivered to Ruwitch on May 25, 1989, and the first premium had already been paid. Ruwitch's death was directly caused by the cancer. Thus, Penn Life is entitled to judgment as a matter of law.

The trustee points to the provision in the policy that information in the application would be regarded as "representations, not warranties." She contends this means that unless Ruwitch knew he had cancer at the time of delivery of the policy, the policy became effective and Penn Life must pay the benefits. When the contract is read as a whole, however, it is clear that it was Penn Life's intent to make the effective-ness of the policy conditional on the delivery of the policy while Ruwitch was still alive and in good health. To construe the good health clause otherwise would render it superfluous. As stated by the *Kirk* court, "[h]ad the insurer known that the applicant for insurance was afflicted with a disease that probably would, as it did, soon cause ... death, it doubtless would not have issued the policy." *Kirk*, 81 S.W.2d at 343. Thus, it makes no difference whether Ruwitch knew he had cancer at the time the policy was delivered. *See Security Benefit*, 318 F.2d at 850. "[I]t is the fact that is at issue, and not the question of good or bad faith." *Lipel*, 192 S.W.2d at 875.

Accordingly, the judgment is reversed, and the case is remanded to the district court with instructions to enter judgment for Penn Life.[3]

### AMENDED ORDER

The court's order of July 7, 1992, is amended as follows:

The suggestion for rehearing en banc is denied. Judge McMillian would grant the suggestion for rehearing en banc.

The petition for rehearing is also denied.

---

**3.** Because we find that Penn Life's good health clause defense is valid, we need not reach its other claims that the district court erred by refusing to instruct the jury on the good health defense and by instructing the jury that Penn Life had to prove Ruwitch had "actual intent to deceive" when he failed to disclose the April 1989 physical examination to the company.